**Earl PRESTON, dba Pioneer Insurance Company, Appellant (Defendant below),**

v.

**NATRONA SERVICE, INC., a Wyoming Corporation, Appellee (Plaintiff below).**

**No. 3944.**

Supreme Court of Wyoming.

Oct. 13, 1971.

Ernest Wilkerson, Casper, for appellant.

Robert Jerry Hand, Casper, for appellee.

Before McINTYRE, C. J., and PAR-
KER, McEWAN and GRAY, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

This is an appeal by the defendant from a judgment rendered in favor of the plaintiff for monies alleged to have been converted by defendant. Defendant, an insurance agent, sold to plaintiff insurance covering certain aircraft owned by plaintiff.

During the month of February, 1969, defendant went to the office of John Mac-Guire, the president of plaintiff corporation, Natrona Services, Inc., and solicited plaintiff's business for the purchase of aircraft liability and hull insurance. Defendant represented himself as an agent for several insurance companies, and specifically as an agent for Gulf Insurance Company of Panama, Inc. Thereupon, on March 7, 1969, plaintiff received a coverage binder for said insurance with Gulf, which binder was signed by defendant as agent. Upon receipt of said binder plaintiff delivered unto defendant its check made payable to Pioneer Insurance Agency for $795 as down payment. Thereafter, the remaining premium balance of $2,382.-90 was paid by plaintiff. Plaintiff's checks were deposited to the account of Pres-Tad Corporation, which corporation was using the trade name and style of Pioneer Insurance Agency. The premium monies given by plaintiff to defendant were never transferred from the account of Pres-Tad Corporation to Gulf.

Subsequently, Mr. MacGuire made inquiries about Gulf Insurance Company of Panama from the Wyoming State Insurance Commissioner and found the Gulf company was not authorized to do business in Wyoming. Thereafter, MacGuire had a conversation with defendant wherein he told defendant of his dissatisfaction with Gulf and advised defendant to place plaintiff's insurance with a company that was licensed to do business in the State of Wyoming and that had sufficient money to cover people in the event of loss. Defendant acquired another insurance policy issued through an agency in Denver for which the total policy premiums for one

year were $2,845. Only $711 were forwarded to the Denver agency and subsequently this policy, issued in lieu of the original Gulf policy, was cancelled for nonpayment of premium, the cancellation being August 2, 1969. It appears—and the parties are not in disagreement—that the plaintiff had insurance coverage for a period of one-fourth of the year.

Defendant argued that judgment should not have been rendered against him as an individual; that there was no proper showing of damages by plaintiff; and that it was not borne out by the evidence that defendant willfully and intentionally converted said money to his own use and did not secure the insurance coverage applied for by plaintiff. We think there was sufficient substantial evidence to support the trial court's findings and judgment.

During the trial of the cause before the court sitting without a jury several facts became known. Defendant caused to be organized the "Gulf Insurance Company of Panama, Inc." He contacted an attorney in Panama by phone and through further telephone conversations and correspondence the corporation was chartered. Defendant put about $2,000 into the corporation, which funds were used to form the corporation. No one else put any monies into the corporation. Defendant and his wife were both initial directors of the corporation, the other two being William Royce Walker and Robert Lee Bressler. The authorized capital of the corporation was 50,000 shares of common stock having a par value of $1 per share. According to the articles of incorporation:

"* * * Directors need not be shareholders of the corporation. A Director may be removed at any time by vote of the holders of a majority of the subscribed shares with rights to vote. The powers of the corporation shall be exercised by the Board of Directors, * * *"

According to the minutes of the first meeting of the board of directors held February 22, 1969, a copy of which was introduced into evidence by defendant and received by the court, the distribution of shares was as follows:

"* * * Earl and Donna Preston are to have controlling interest with 23,999 shares each. Robert L. Bressler 1,000 shares. William R. Walker 1,000 shares. One (1) share to Woodrow de Castro and (1) share to David de C. Robles. Talk on shares was tabled for 30 days before making final decision on distribution. * * *"

The minutes of the second board of directors meeting held March 15, 1969, contained the following:

"* * * Distribution of shares was the next order of business. The final distribution is as follows: 22,999 shares to Earl L. Preston, 3111 Garden Cr. Road, Casper [sic] Wyoming; 22,999 shares to Donna J. Preston, 3111 Garden Cr. Road, Casper [sic] Wyoming; 2,000 shares to William R. Walker and Nina M. Walker, Box 102, Guernsey, Wyoming; 2000 [shares] to Robert L. Bressler and Mary Jane Bressler, Box 544, Casper, Wyoming; 1 share to Castro de C. Robles, Apartodo 7082, Panama 5, Panama; 1 share to Woodrow de Castro, Apartodo 7082, Panama 5, Panama.

* * * * * *

"The last order of business was the review of policies already written. * * *"

Defendant sought out Walker and Bressler to become directors of the Gulf Company, neither of whom knew anything about the insurance business. Defendant determined the rates to be charged by Gulf and had the policies printed. He did not have authority from Gulf Insurance Company to issue the policy in the amount he sought to do in the binder given to plaintiff. According to the minutes, Gulf Insurance Company was not to issue a policy to any one person in excess of $25,000. According to the binder, plaintiff's aircraft hull insurance was to be $28,500, while the liability was $1,000,000 for each accident.

Defendant testified that Pioneer Insurance Agency and Pres-Tad Corporation were one and the same and that Pioneer Insurance Agency was a trade name for Pres-Tad Corporation in which defendant held a majority interest. He could have instructed the bookkeeper for Pioneer to send a check to Gulf for the premiums. Defendant could draw checks on the Gulf account and the Pres-Tad account.

When defendant was advised that the policy issued through the Denver agency was cancelled because of nonpayment of premiums, he testified:

> "Yes, I immediately got on the phone and asked him [the Denver agency] if I could pay the premium and get the policy reinstated and he said there was no way. I just didn't have the money—or Pioneer didn't have the money to pay the premium on it."

■ While it may be that there was no specific showing as to what defendant actually did with the money paid by plaintiff, we think it is abundantly clear from the record that defendant had control—or could have exercised control—over the funds paid by plaintiff, and, further, that defendant did not secure the insurance coverage applied for by plaintiff. 2 Couch, Insurance, pp. 453 and 458 (1960).

Defendant was licensed by the State of Wyoming as an insurance agent. Under the terms of the licensing statutes, § 26.1–190(a), W.S.1957 (C.1967):

> "All premiums or return premiums received by an agent, broker, or solicitor shall be trust funds so received by the licensee in a fiduciary capacity, and the agent, broker, or solicitor shall in the applicable regular course of business account for and pay the same to the insured, insurer, or agent entitled thereto."

Even in the absence of statutory requirements we think that under the circumstances of this case where defendant had control of the various corporations, he had a duty to see that the funds were applied to the use for which they were secured from plaintiff. Having so failed, he must now personally account for his actions, and failing to show reasonable exercise of such duty, his personal liability is established. He authored and executed the plan which led to his own misfortune and he cannot now be heard to complain that someone else, i. e., the corporations, should be made to respond.

We further believe that under the circumstances the trial court made a proper determination of plaintiff's damages—that is, the amount paid by plaintiff for one year's coverage less the fair value of the protection enjoyed by plaintiff.

> "* * * Where there is no evidence of greater loss sustained by the insured, the measure of damages has been held to be the premiums or assessments paid by the insured with interest thereon. There is a conflict of authority as to whether there should be deducted from the refunded premiums an amount representing the insurance coverage enjoyed by the insured during the interval prior to his rescission of the contract for fraud. Some courts do not make any deduction for such intervening coverage, while others require such a reduction to be made. * * *" 2 Couch, Insurance, p. 432 (1960).

The trial court determined the value of the one-fourth year's coverage to be $794.47, which was one-fourth of the total annual premium paid by plaintiff to defendant. Defendant actually paid only $711 to the Denver agency for the coverage of the one-fourth yearly period, the total policy premiums for one year being $2,845.

We note by its letter of July 2, 1970, the trial court correctly determined that one-fourth of the $3,177.90 paid by plaintiff was $794.47. When this one-fourth was deducted from the full amount paid it left a balance of $2,383.43; however, when the judgment was entered this sum was shown as $2,338.43. The correct amount of $2,-383.43 should be entered.

■ Appellant questions the trial court's allowance of $375 as attorney's fees. Appellee cites no authority or even mentions

the point in its brief. Section 26.1–239, W.S.1957 (C.1967), of the Insurance Code makes some provisions for attorney's fees in actions against unauthorized insurers, but it has no application to the case at hand. The general rule is that in the absence of a contract or statutory provisions attorney's fees are not recoverable. Werner v. American Surety Company of New York, Wyo., 423 P.2d 86, 88. We know of no theory upon which such fees could be allowed, and none having been called to our attention we must conclude that the judgment must be modified to exclude the allowance of attorney's fees.

The judgment as modified hereinabove is affirmed.

PARKER, Justice (concurring in part).

Although I concur generally in the result of the opinion, I find no basis for reversing the court's allowance of attorney fees. Section 26.1–239, W.S.1957 (C.1967), interpreted with § 26.1–231, W.S.1957 (C.1967) (1971 Cum.Supp.), seems to be authority for the allowance, and appellant has presented nothing to the contrary.